```
              UNITED STATES DISTRICT COURT
               DISTRICT OF NEW HAMPSHIRE
```

SignalQuest, Inc.

    v.                               Civil No. 11-cv-392-JL
                                        Opinion No. 2012 DNH 090

Tien-Ming Chou and Oncque
Corporation

## **MEMORANDUM ORDER**

When service of process absolutely, positively has to be effected on a Taiwanese defendant pursuant to Federal Rule of Civil Procedure 4(f)(2)(C)(ii), is Federal Express enough? Defendants Tien-Ming Chou and Oncque Corporation, citizens of Taiwan to whom the clerk of this court sent the summons and complaint in this action via Federal Express, say no, and have moved to dismiss for insufficient service of process. See Fed. R. Civ. P. 12(b)(5). Noting that Rule 4(f)(2)(C) does not allow for service on foreign defendants in a manner "prohibited by the foreign country's law," they argue that enlisting the clerk of this court to send them process by Federal Express was improper because that method of service is not prescribed by the Taiwanese laws governing service of process. Plaintiff SignalQuest, Inc. argues in response that the rule merely precludes service using a method expressly <u>proscribed</u> by the applicable foreign law, and does not require the plaintiff to make service using a method expressly <u>prescribed</u> by that law.

Because this is an action for patent infringement, this court has jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question) and 1338 (patent).  After hearing oral argument, the court denies defendants' motion.  The plain meaning of the word "prohibited" favors SignalQuest's interpretation of Rule 4(f)(2)(C).  Moreover, another provision of Rule 4, subsection (f)(2)(A), already permits parties to make service on a defendant in a foreign country "as prescribed by the foreign country's law for service in that country."  If subsection (f)(2)(C) is read in the manner defendants argue, then it would authorize precisely the same form of service as subsection (f)(2)(A), making at least one of those provisions superfluous.  Because it is undisputed that Taiwanese law does not expressly prohibit the manner of service employed here, the court concludes that service on defendants was proper.

I.  **Applicable legal standard**

When the sufficiency of process is challenged under Rule 12(b)(5), the plaintiff bears "the burden of proving proper service."  Rivera-Lopez v. Municip. of Dorado, 979 F.2d 885, 887 (1st Cir. 1992); see also Saez Rivera v. Nissan Mfg. Co., 788 F.2d 819, 821 n.2 (1st Cir. 1986).  "A plaintiff may rely on specific allegations in the complaint to create a prima facie

showing of facts that would dictate the appropriate means of service." C3 Media & Mktg. Grp., LLC v. Firstgate Internet, Inc., 419 F. Supp. 2d 419, 427 (S.D.N.Y. 2005) (citing Jazini v. Nissan Motor Co., 148 F.3d 181, 184 (2d Cir. 1998)).  "But in resolving the motion, the court must look to matters outside the complaint to determine what steps, if any, the plaintiff took to effect service."  Id.  Such matters may include the return of service, affidavits submitted by the parties, and testimony or other evidence adduced at an evidentiary hearing.  See generally Blair v. City of Worcester, 522 F.3d 105 (1st Cir. 2008); see also 5B Charles Alan Wright et al., Federal Practice and Procedure § 1353, at 343-45 (3d ed. 2004) (cataloguing evidence admissible on Rule 12(b)(5) motion).

## II.  Background

   This action arises out of a patent dispute.  SignalQuest is a Delaware corporation headquartered in New Hampshire.  Chou is the CEO of Oncque, a Taiwanese corporation with its principal place of business in Taiwan.  He is also the original owner of U.S. Patent No. 6,706,979 (the "'979 patent"), which teaches a vibration switch including a housing with an accomodation chamber for receiving two electric contract bodies, and which SignalQuest alleges Chou either assigned or licensed to Oncque.

In July 2011, Chou sent SignalQuest a cease and desist letter claiming that certain of its products infringed the '979 patent. That same month, Oncque contacted one of SignalQuest's distributors and demanded that the distributor remove SignalQuest's products from its website because they infringed the '979 patent. SignalQuest, believing that legal action by defendants was imminent, responded by filing this action for a declaratory judgment that it is not infringing the '979 patent. Before attempting to serve the complaint on defendants, SignalQuest amended it to add a claim for patent infringement, which alleges that Chou and Oncque are themselves infringing SignalQuest's patents, specifically, U.S. Patents Nos. 7,067,748; 7,326,866; and 7,326,867.

After trying unsuccessfully to persuade defendants' counsel to accept service on their behalf, SignalQuest filed an affidavit with this court requesting that service be made pursuant to Federal Rule of Civil Procedure 4(f)(2)(C)(ii).[1] It also provided the clerk of this court with copies of the summons, complaint, and other documents for service on defendants via

---

[1] See Service of Judicial Documents in Foreign Countries, at www.nhd.uscourts.gov/cp/filing-information/ForeignDefendant.asp ("[T]his district . . . requires that attorneys seeking service of process in a foreign country by mail provide an affidavit setting forth the precise manner of service chosen and the legal authority to support the selected method of service.").

Federal Express.  Federal Express delivered the service documents to Oncque at its headquarters in Taichung City, Taiwan on December 1, 2011.  An individual named "S. Wang"--who, defendants say, is a sales assistant at Oncque--signed the delivery receipt.  After Federal Express twice attempted delivery on Chou at his residence in Taiwan and was rebuffed, plaintiffs returned to the clerk of this court and provided documents to be served on Chou via Federal Express at his place of employment, Oncque.  On December 19, 2011, Federal Express delivered the service documents to Chou at Oncque's headquarters in Taichung City; "S. Wang" again signed the delivery receipt.  Oncque and Chou filed the present motion on January 20, 2012.

### III. **Analysis**

Before a federal court may exercise jurisdiction over a defendant, the procedural requirements of service of process must be satisfied.  Omni Capital Int'l Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987).  Those requirements are set out in Federal Rule of Civil Procedure 4.  Rule 4(f) governs service on an individual in a foreign country, while Rule 4(h)(2) governs service on corporations in foreign countries.  The requirements set forth in those subsections are nearly identical; Rule 4(h)(2) provides that service on a foreign corporation may be made "in

5

any manner prescribed by Rule 4(f) for serving an individual,"
with one exception not relevant here.

In full, Rule 4(f) provides:

Unless federal law provides otherwise, an individual--
other than a minor, an incompetent person, or a person
whose waiver has been filed--may be served at a place
not within any judicial district of the United States:

   (1) by any internationally agreed means of service
   that is reasonably calculated to give notice, such
   as those authorized by the Hague Convention on the
   Service Abroad of Judicial and Extrajudicial
   Documents;

   (2) if there is no internationally agreed means, or
   if an international agreement allows but does not
   specify other means, by a method that is reasonably
   calculated to give notice:

      (A) as prescribed by the foreign country's law for
      service in that country in an action in its courts
      of general jurisdiction;

      (B) as the foreign authority directs in response
      to a letter rogatory or letter of request; or

      (C) unless prohibited by the foreign country's
      law, by:

         (i) delivering a copy of the summons and of the
         complaint to the individual personally; or

         (ii) using any form of mail that the clerk
         addresses and sends to the individual and that
         requires a signed receipt; or

   (3) by other means not prohibited by international
   agreement, as the court orders.

Here, the parties agree that SignalQuest did not make service on
defendants pursuant to Rules 4(f)(1), (2)(A)-(B), or (3).  Taiwan

is not a signatory to the Hague Convention or any other agreement specifying an appropriate means of service, so service pursuant to Rule 4(f)(1) is not a possibility, and it is undisputed that SignalQuest did not follow Taiwan's law governing service, the directions given in response to a letter rogatory, or any order of this court.  As just mentioned, SignalQuest relies solely on Rule 4(f)(2)(C)(ii), contending that it properly effectuated service of process under that section by having the clerk of this court deliver the summons and complaint to defendants by Federal Express.  Defendants' disagreement with that contention is limited to a single issue:  they argue that the method of service SignalQuest chose in this case is "prohibited by the foreign country's law," and therefore ineffective under Rule 4(f)(2)(C).[2]

---

[2]The court notes that there are at least two other potential problems with the method of service SignalQuest chose.  First, Federal Express, as a private courier service, may not constitute a "form of mail" within the meaning of Rule 4(f)(2)(C)(ii).  Compare NSM Music, Inc. v. Villa Alvarez, No. 02-cv-6482, 2003 WL 685338, *2 (N.D. Ill. Feb. 25, 2003) (holding service under Rule 4(f)(2)(C)(ii) invalid because Federal Express did not constitute mail "as that term is commonly understood") with IntelliGender, LLC v. Soriano, No. 10-cv-125, 2012 WL 215066, *2 (E.D. Tex. Jan. 24, 2012) ("[S]everal courts have implicitly ruled that service under Rule 4(f)(2)(C)(ii) using signed receipt Federal Express mail is appropriate.").  Second, it is far from clear that delivering service documents to Chou at his place of work, where they were signed for by another individual, is sufficient under the rule.  Compare Intelsat Corp. v. Multivision TV LLC, 736 F. Supp. 2d 1334, 1341-42 (S.D. Fla. 2010) (where "receipts were signed by receptionists at [defendant's] place of work, not by [defendant] himself," defendant "was not properly served under Rule 4(f)(2)(C)(ii)") with Martinez v. White, No. C 06-1595 CRB,

The principal point of disagreement between the parties is the proper interpretation of the term "prohibited by the foreign country's law." That matter has occupied a number of courts, and two clear lines of authority, corresponding to the positions the parties stake out here, have developed. "The vast majority of cases to consider the issue have held that a method of service is not prohibited under Rule 4(f)(2)(C)(ii) unless it is expressly prohibited by a foreign country's laws." Fujitsu Ltd. v. Belkin Int'l, Inc., No. 10-cv-3972, 2011 WL 3903232, *3 (N.D. Cal. Sept. 6, 2011); see also SEC v. Alexander, 248 F.R.D. 108, 111-12 (E.D.N.Y. 2007) (collecting cases). The only judge of this court to consider the issue has also taken that view, see Emery v. Wood Indus., Inc., 2001 DNH 155, 4-5 (McAuliffe, J.), which is the interpretation SignalQuest urges. The remaining cases, which have interpreted the rule in the manner defendants urge, hold that "unless expressly permitted by foreign law, service by registered mail should be deemed prohibited under Rule 4(f)(2)(C)(ii)." TruePosition, 2006 WL 1686635 at *4.

---

2006 WL 2792874, *2 (N.D. Cal. Sept. 28, 2006) (Rule 4(f)(2)(C)(ii) "does not require defendant's signature; it merely requires a signed receipt."). Defendants have not raised either of these issues, though, and in the absence of briefing and the presence of divergent authority, the court expresses no opinion on whether either one would render service here inadequate.

As between the two interpretations, the court finds the majority view more persuasive.  To begin, that interpretation fits more comfortably with the plain language of Rule 4(f)(2)(C) itself, which, of course, is the "starting point" for "interpreting a formal rule of procedure."  Delgado v. Pawtucket Police Dep't, 668 F.3d 42, 49 (1st Cir. 2012).  To "prohibit" means "to forbid by authority or command:  ENJOIN; INTERDICT." Webster's Third International Dictionary 1813 (1993); see also Black's Law Dictionary 1212 (6th ed. 1990) (defining "prohibit" as "[t]o forbid by law; to prevent").[3]  "A form of service is not 'forbidden by authority' merely because it is not a form explicitly 'prescribed' by the laws of a foreign country." Dee-K Enters. Inc. v. Heveafil Sdn. Bhd., 174 F.R.D. 376, 380 (E.D. Va. 1997); see also Wright, supra § 1134 (noting that while the rule "can be interpreted to bar parties from using any method of service not explicitly prescribed by the laws of the foreign country . . . this reading of the rule seems inconsistent with the text on its face.").  To be "prohibited" requires something

---

[3]Federal courts, including this one, frequently look to Webster's and Black's when attempting to ascertain the ordinary or natural meaning of a word or phrase.  E.g., Knowles v. N.H. Dep't of Corrs. Comm'r, 538 F. Supp. 2d 453, 460 (D.N.H. 2008) (citing Smith v. United States, 508 U.S. 223, 228-29 (1993)). Here, the court looks to the editions of each dictionary in print at the time Rule 4(f)(2)(C) was adopted in 1993.  See Perrin v. United States, 444 U.S. 37, 42-43 (1979).

more, akin to a clear command that a course of action cannot be taken.

To the extent that any ambiguity remains in the text of Rule 4(f)(2)(C) when that provision is considered in isolation, moreover, that ambiguity disappears when it is viewed in context. See Delgado, 668 F.3d at 49 (language of a procedural rule must be interpreted "with due regard to . . . the context in which it is found"). To conclude that any method of service not prescribed by a foreign country's law is prohibited under subsection (f)(2)(C) of Rule 4 would appear to render that provision superfluous. This is because subsection (f)(2)(A) of the rule allows service to be effected on a defendant in a foreign country "as prescribed by the foreign country's law." As one court has explained:

> [I]f subsection (f)(2)(C) is inapplicable where a form of return receipt mail is not prescribed by the law of a foreign country, then a plaintiff's failure to satisfy subsection (f)(2)(A) would preclude the availability of subsection (f)(2)(C) thereby making the latter subsection useless. In order to give subsection (f)(2)(C) operative effect, the subsection should be interpreted to permit service of process by alternative forms of service that, while not specifically prescribed by the laws of a foreign country, are also not prohibited by such laws.

Res. Ventures, Inc. v. Res. Mgmt. Int'l, Inc., 42 F. Supp. 2d 423, 430 (D. Del. 1999); see also Dee-K, 174 F.R.D. at 380 ("[I]f all forms of service not 'prescribed' are 'prohibited', then the

failure to satisfy subsection (f)(2)(A) would preclude the availability of subsection (f)(2)(C) and the latter subsection would have no effect; it would be useless."). "[A] court called upon to construe a procedural rule should give effect, whenever possible, to every word and phrase contained in the rule's text," United States v. Ven-Fuel, Inc., 758 F.2d 741, 751-52 (1st Cir. 1985), and defendants proffer no interpretation of Rule 4(f)(2)(C) that would not in essence read that subsection out of the rule. Indeed, defendants do not acknowledge the existence of Rule 4(f)(2)(A), let alone try to reconcile it with their interpretation of Rule 4(f)(2)(C).[4]

Instead, defendants appeal to policy, arguing that to require a method of service "be 'explicitly prohibited' under the law of the foreign country would leave the drafters of civil procedure rules in foreign countries with the daunting task of listing every forbidden method of service they could contemplate at the time." Even assuming that such a concern could overcome the rule's plain language, defendants overstate their case. As

---

[4] Nor, for that matter, do any of the cases defendants cite in support of their interpretation of the rule. See Exp.-Imp. Bank of U.S. v. Asia Pulp & Paper Co., Ltd., No. 03-cv-8554, 2005 WL 1123755, *2-*3 (S.D.N.Y. May 11, 2005); Jung v. Neschis, No. 01-cv-6993, 2003 WL 1807202, *2-*3 (S.D.N.Y. Apr. 7, 2003); Procter & Gamble Cellulose Co. v. Viskoza-Loznica, 33 F. Supp. 2d 644, 664-65 (W.D. Tenn. 1998); Graval v. P.T. Bakrie & Bros., 986 F. Supp. 1326, 1329 (C.D. Cal. 1996).

SignalQuest notes, Rule 4(f)(2)(C) does not require quite so daunting a task, because a country could prohibit any means of service not specifically prescribed by its own laws with a single sentence, e.g., "process in a case pending in a foreign country shall not be served upon a citizen of this country except as specified by the laws of this country."[5]

The court therefore concludes that service by Rule 4(f)(2)(C)(ii) is permitted unless the law of the foreign country in which the defendant is located expressly proscribes service by the means specified therein. With the proper interpretation of the rule thus resolved, the resolution of defendants' motion becomes a simple matter. Defendants themselves admit that Taiwanese law contains no explicit textual prohibition on service in the manner undertaken in this case. See document no. 18 at 1 ("service by Federal Express is not literally prohibited under

---

[5]Furthermore, Rule 4(f)(2)(C) does not permit service by every method of service that can be contemplated, but permits only two narrow forms of service (by delivery to an individual personally or by return-receipt mailing by a federal court clerk). Those are the only two forms of service that the foreign country would have to prohibit to prevent service from being made under the rule. And although it may admittedly seem farfetched to expect a country to expressly prohibit a means of service-- especially since our own rules do not explicitly do so, instead opting to specify acceptable means of service and let negative implication do the rest--it is not inconceivable. In fact, at least one country has expressly prohibited service through one of the methods set forth in the rule. See Prewitt Enters., Inc. v. OPEC, 353 F.3d 916, 925 (11th Cir. 2003) (applying Austrian law).

[Taiwanese law]"); id. at 2 (Taiwanese law "is silent on whether service by Fed Ex is prohibited").  They attempt to argue that service that "is not articulated in" Taiwanese law "is implicitly prohibited under Taiwanese law" by "negative implication."  But this argument boils down to the proposition that service not expressly prescribed by a foreign country's law must be prohibited--a proposition that fails for the reasons just discussed.

Accordingly, service as specified by Rule 4(f)(2)(C)(ii) is not prohibited by Taiwanese law.  In so holding, the court joins at least five other federal courts to examine this issue.  See Belkin Int'l, 2011 WL 3903232 at *2-*3; Fujitsu Ltd. v. Nanya Tech. Corp., No. 06-cv-6613, 2007 WL 484789, *5 (N.D. Cal. Feb. 9, 2007); TruePosition, 2006 WL 1686635 at *4-*6; Power Integrations, Inc. v. Sys. Gen. Corp., 04-cv-2581, 2004 WL 2806168, *2-*3 (N.D. Cal. Dec. 7, 2004); Emery, 2001 DNH 155, 4-5.  Because the service in this case was reasonably calculated to give defendants notice of this action and did, in fact, provide them such notice, the court concludes that service on defendants was proper under Rule 4(f)(2)(C)(ii).

**IV.  Conclusion**

For the reasons set forth above, defendants' motion to dismiss[6] is DENIED.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  May 22, 2012

cc:  Robert R. Lucic, Esq.
     Thomas J. Donovan, Esq.
     Nicholas F. Casolaro, Esq.
     Timothy N. Trop, Esq.

---

[6] Document no. 15.