```
             UNITED STATES DISTRICT COURT
              DISTRICT OF NEW HAMPSHIRE
```

SignalQuest, Inc.

    v.                                     Civil No. 11-cv-392-JL
                                              Opinion No. 2016 DNH 035

Tien-Ming Chou,
OneQue Corporation, and
Bravotronics Corporation

## MEMORANDUM ORDER

This patent infringement action relates to tilt and vibration sensors.  Defendants Tien-Ming Chou, OncQue Corporation, and defendant and counter-claimant Bravotronics Corporation, have moved for summary judgment that the patents asserted in this action by plaintiff and counter-claim defendant SignalQuest, Inc.,[1] are invalid and that Bravotronics does not infringe them.  Specifically, the defendants contend that SignalQuest's patents are invalid because, during a recently-concluded ex parte reexamination, SignalQuest cancelled a dependent claim related to the shape of the embodiment of one part of the invention, thus -- defendants contend -- disclaiming that particular embodiment and invaliding the patent to the extent SignalQuest contends the reissued claims cover that embodiment.  And even if the patents are valid, the defendants argue, defendants do not infringe because they do not sell any of the accused products in the United States.

---

[1] U.S. Patent Nos. 7,067,748C1, 7,326,866C1, and 7,326,867C1.

This court has jurisdiction pursuant to 28 U.S.C. §§ 1338 (patents) and 1331 (federal question). After hearing oral argument, the court denies the defendants' motion. As discussed more fully below, SignalQuest has submitted evidence sufficient to raise a question of material fact as to whether the defendants have made offers to sell the accused infringing devices within the United States. And the defendants have not demonstrated that they are entitled to judgment of invalidity as a matter of law.

## I. Applicable legal standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant bears the burden of showing the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The opposing party may defeat such a motion by presenting competent evidence of record demonstrating a genuine issue of material fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The court views the evidence presented in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. Id. at 255. But the court need not countenance "conclusory allegations, improbable inferences, and unsupported speculation."

Medina–Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

## II.  Background

In this case, SignalQuest has asserted three related patents against the defendants.  The defendants moved for summary judgment that they do not infringe SignalQuest's patents and that said patents are invalid in light of positions taken by SignalQuest before the United States Patent and Trademark Office ("USPTO") during reexamination.

SignalQuest's patents describe an omnidirectional tilt and vibration sensor.  These sensors can be used to switch an electrical circuit ON or OFF.  Tilt the sensor one way, and a free-moving conductive element comes in contact with two terminals, completing a conductive path and turning the circuit ON; tilt it another way, and the conductive element moves out of contact with one or both of the terminals, disrupting the conductive path and turning the circuit OFF.

The SignalQuest patents were granted on June 27, 2006, and February 5, 2008.  After SignalQuest amended its complaint in this action to accuse the defendants of infringing these patents,[2] the USPTO instituted an ex parte reexamination of the

---

[2]SignalQuest initially sought only a declaratory judgment that it did not infringe one of OncQue's patents.  See Complaint

same.  All three patents survived reexamination, though not all claims survived.  SignalQuest cancelled some claims, rewrote or amended others, and added still other claims.  The court stayed the instant action while the USPTO reexamined these patents.  After all three patents reissued in October 2014, the court lifted that stay.  The defendants then moved for summary judgment and the court held a hearing on defendants' motions on January 26, 2016.[3]

### III. Analysis

#### A. Non-infringement

The Patent Act provides that "whoever without authority . . . offers to sell[] or sells any patented invention, within the United States . . . infringes the patent."  35 U.S.C. § 271(a).  Defendants seek summary judgment that they have not infringed SignalQuest's patents because they have not sold or offered any of the accused products for sale in the United States after the patents reissued and because intervening rights extinguish

---

(document no. 1).  Two months later, SignalQuest amended its complaint to assert its own patents against Chou and OncQue.  See First Amended Complaint (document no. 5).  SignalQuest subsequently amended its complaint three more times.  The Fourth Amended Complaint (document no. 76) is operative here.

[3]At that hearing, the court also heard the parties' arguments on their proposed constructions of claim terms in the SignalQuest patents.  The court will construe those disputed terms in a separate order.

SignalQuest's claims to pre-reexamination damages.  See Mem. (document no. 86-1) at 10.  SignalQuest concedes no sale of the accused products in the United States, but offers evidence that, it submits, raises a question of material fact as to whether defendants offered the accused products for sale both before and after its patents reissued.  The court agrees.

### 1. Post-reexamination offers for sale

SignalQuest submits that defendants have offered the accused products for sale in the United States on at least two occasions after the patents reissued.[4]  As evidence of this, SignalQuest has offered a quotation for the defendants' VBS-030600 product sent to a North Carolina-based company in late 2014,[5] see Plaintiff's Ex. 14, and a quotation for the same product sent to International Assembly, a company based in Texas, on or around March 25, 2015.[6]  Defendants concede that both quotations were

---

[4] The last reexamination certificate issued on October 31, 2014.

[5] SignalQuest suggests that this quotation was sent on December 30, 2014, but -- as defendants point out -- it appears to be dated November 2, 2014.  For ease of reference, the court refers to it as the "November 2014 quotation."

[6] SignalQuest moved to supplement the summary judgment record to include this document on January 11, 2016, several months after it filed its objection to defendants' summary judgment motion.  Defendants assented to that motion and the court granted it.  See document no. 103; Order of January 13, 2016.

sent, but argue that neither quotation rises to the level of an "offer to sell" under § 271(a). Even if they did, defendants contend, neither offer was made "within the United States," as that statute requires. Neither argument prevails. To the contrary, both arguments highlight existing questions of material fact on these issues that are sufficient to defeat defendants' bid for summary judgment.

### a. "Offers for sale"

Whether there has been an offer to sell under § 271(a) is determined "according to the norms of traditional contract analysis." MEMC Elecs. Materials, Inc. v. Mitsubishi Materials Silicon Corp., 420 F.3d 1369, 1376 (Fed. Cir. 2005) (quotations omitted). Thus, an offer for sale occurs when "the defendant . . . communicate[s] a manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." Id. (quotations omitted). The terms of the offer must be specific enough to enable "a binding contract simply by acceptance." Id. Defendants argue that neither the November 2014 nor March 2015 quotations amounts to an offer to sell the accused product because each quotation requires the recipient to do more than simply accept to complete a purchase.

First, defendants argue, both quotations are insufficiently specific because they do not specify a quantity. Reply (document no. 93) at 5; Response to Supp. (document no. 104) at 2. The November 2014 quotation appears to quote a price per unit depending on the desired volume. Similarly, the March 2015 quotation specifies an estimated annual usage quantity and a price based on that estimate. To accept these offers, defendants maintain, the recipient would have to do more than merely state its acceptance; it would also have to indicate how many pieces it wanted to buy. However, price quotations may "be regarded as 'offers to sell' under § 271 based on the substance conveyed in the letters, i.e., a description of the allegedly infringing merchandise and the price at which it can be purchased." 3D Sys. v. Aarotech Labs., Inc., 160 F.3d 1373, 1379 (Fed. Cir. 1998). A reasonable jury could interpret these quotations, which indicate the price per unit depending only on the purchaser's desired volume, as providing just such a description of the alleged infringing product. Thus, the quotations may rise to the level of an offer to sell under § 271(a) because they "justify another person in understanding that his assent to that bargain is invited and will conclude it." MEMC, 420 F.3d at 1376 (internal quotations omitted).

Second, defendants contend that March 2015 quotation is not an offer because the customer must select one of two proposed products and it would "make no sense" to order both products. But defendants admit that the recipient may, on the basis of the quotation, decide to order the accused product and, as with the November 2014 quotation, the quotation's recipient need only specify the quantity desired to complete the transaction. Obj. to Supp. (document no. 104) at 1-2. That the recipient has the option to purchase a different product instead is immaterial. Thus, a question of fact exists as to whether the November 2014 and March 2015 quotations are "offers for sale" under the statute.

### b.  "Within the United States"

And if they are offers, defendants argue that neither the November 2014 nor March 2015 quotations are offers made "within the United States," as required by § 271(a) because the quotations contemplated that the title transfer would occur in Taiwan[7] and because the real purchaser under the November 2014 quotation may be a contract manufacturer in China. Reply (document no. 93) at 6-7; Obj. to Supp. (document no. 104) at 2.

---

[7]Both the November 2014 and March 2015 quotations contain either the term "FOB Taiwan" or "ex works," indicating as much.

These arguments implicate the territoriality limitations of § 271(a), which limits infringing offers for sale to those made "within the United States." 35 U.S.C. § 271(a).

In the context of offers for sale, "the location of the contemplated sale controls whether there is an offer to sell within the United States." Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc., 617 F.3d 1296, 1309 (Fed. Cir. 2010) ("[A]n offer which is made in Norway by a U.S. company to a U.S. company to sell a product within the U.S., for delivery and use within the U.S. constitutes an offer to sell within the U.S. under § 271(a)."); see also Halo Elecs., Inc. v. Pulse Elecs. Inc., 769 F.3d 1371, 1381 (Fed. Cir. 2014) (adopting the reasoning of Transocean and concluding that offers arguably made within the United States did not amount to infringement under § 271(a) where the accused products were manufactured abroad, and would have been shipped and delivered abroad). Because the location of a sale is not limited to the location where legal title passes, see Halo, 769 F.3d at 1378, it follows that an "f.o.b" or "ex works" term in an offer for sale does not conclusively establish that the sale would have occurred outside of the United States.

SignalQuest has raised a question of material fact as to where delivery under the sales contemplated by the November 2014

9

and March 2015 offers would have taken place. And these questions of fact are fatal to defendants' motion for summary judgment. Specifically, the March 2015 quotation states, on its face, "Departure: TW Taiwan" and "Destination: US United States." Taking this evidence in the light most favorable to the non-moving party, it indicates that the parties at least contemplated delivery of the accused products from Taiwan into the United States. The November 2014 quotation presents a slightly more complicated picture. As defendants point out, the real purchaser may be a contract manufacturer in China rather than the North Carolina company. Reply (document no. 93) at 9. Under Halo, an offer made to a company based in the United States that contemplates delivery in China of products manufactured in Taiwan or China may very well lack sufficient contact with the United States to constitute an offer for sale "within the United States" under § 271(a). As defendants admitted at oral argument, however, a question of fact remains as to whether that was the case -- or whether the parties contemplated that the products would be delivered to North Carolina, or some other location within the United States. Accordingly, the court must deny defendants' motion for summary judgment of non-infringement after the patents reissued.

### 2. Pre-reexamination offers for sale

Defendants also seek summary judgment of non-infringement as to any alleged offers for sale made before the SignalQuest patents reissued on the grounds that the doctrine of intervening rights extinguishes SignalQuest's ability to recovery for those alleged infringements. See Mem. at 10; Reply at 4-5. As defendants have pointed out, the majority of the evidence that SignalQuest has submitted as alleged offers for sale in the United States predate the patents' reissuance after reexamination. See Plaintiff's Exs. 9-13, 15-17. SignalQuest's evidence that defendants offered to send or sent samples to United States companies similarly predates reissuance. See Plaintiff's Exs. 5-8, 18-20, 22.

Intervening rights "apply as a matter of judicial discretion to mitigate liability for infringing such claims even as to products made or used after the reissue if the accused infringer made substantial preparations for the infringing activities prior to reissue, often referred to as equitable intervening rights." Marine Polymer Techs., Inc. v. HemCon, Inc., 672 F.3d 1350, 1362 (Fed. Cir. 2012). They may be invoked where the patentee makes "substantive changes to the scope of patent claims through post-issuance procedures," including ex parte reexamination proceedings. Id. This analysis requires the court to "interpret

the scope of the claims as they existed pre- and post-reexamination." Yoon Ja Kim v. Earthgrains Co., 451 F. App'x 922, 925 (Fed. Cir. 2011).

   As SignalQuest has pointed out, certain claims in each reissued patent are identical in scope to original dependent claims in the respective original patents.  For example, independent claim 55 of the reissued '748 patent is identical to the original, dependent claim 5, which incorporates the terms of claims 1 and 4.  Claim 49 of the reissued '867 patent and claim 42 of the reissued '866 patent are likewise dependent claims from the original patents that were rewritten as independent claims in the reissued patents, but include all of the limitations of the original claims.  Thus, their scope is identical to that of the original claims.  In response, the defendants argue only that the reissued claims of the SignalQuest patents cannot be identical to the original claims because SignalQuest cancelled all original claims.  Reply Mem. at 4-5.  Where, as here, the evidence makes clear that SignalQuest only cancelled the original claims that the USPTO ultimately allowed on reissue "[t]o clean up the numbering," see, e.g., Defendants' Ex. J at 34-35, those cancellations do not affect the scope of the claims, see Kaufman Co. v. Lantech, Inc., 807 F.2d 970, 978 (Fed. Cir. 1986) (corrections for typographical or minor errors not

"substantive"). Accordingly, the defendants' request for summary judgment that SignalQuest is entitled to no pre-reexamination damages is denied.

### 3. Bravotronics and Mr. Chou

Finally, the defendants also seek summary judgment that Mr. Chou and Bravotronics do not infringe the SignalQuest patents. Their failure to develop these arguments, and to timely raise the latter, dooms this request.

As the parties moving for summary judgment, defendants bear the burden of demonstrating a lack of dispute of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Defendants' bare and unsupported assertions that Mr. Chou was not involved in making the offers discussed supra Parts III.A.1 and III.A.2 fails to satisfy that standard. Such a mere "passing allusion" to an argument does not allow this court to meaningfully address the issue. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("Judges are not expected to be mindreaders. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly . . . ." (internal citations and quotation marks omitted)), cert. denied, 494 U.S. 1082 (1990). Even had they developed this argument, defendants argue only that Mr. Chou did not directly infringe the

SignalQuest patents. But SignalQuest has not alleged that he did; rather, SignalQuest accuses Mr. Chou of indirect infringement. See Fourth Amended Complaint (document no. 76) at ¶¶ 34-48. Defendants fail entirely to address the presence or absence of any question of material fact as to whether or not Mr. Chou <u>indirectly</u> infringed the SignalQuest patents under 35 U.S.C. § 271(b). Therefore, their motion must be denied as to Mr. Chou.

Defendants' request that the court grant summary judgment of non-infringement as to Bravotronics is equally easily disposed of. The court does not consider arguments, such as this one, made for the first time in reply. Attorneys Liab. Prot. Soc'y, Inc. v. Whittington Law Associates, PLLC, 961 F. Supp. 2d 367, 374 (D.N.H. 2013). Even if it did, SignalQuest has introduced unrebutted evidence from which a reasonable jury may infer that the accused product was marketed under both the Onceque and Bravotronics names, <u>see</u> Plaintiff's Exs. 2 and 3; document no. 105, raising a question of material fact as to which of these defendants, or both of them, offered the accused products for sale. Accordingly, the court denies defendants' motion for summary judgment of non-infringement as to Bravotronics.

## B. Invalidity

The defendants also seek summary judgment of invalidity. They contend that the SignalQuest patents are invalid to the extent (and only to the extent) that SignalQuest asserts that the reissued claims cover a "square-shaped embodiment." See Mem. (document no. 86-1) at 7-10. This is so, defendants argue, based on SignalQuest's actions during reexamination. For the reasons discussed below, the court does not find this a convincing invalidity argument.

During reexamination, the examiner concluded that several of the previously-issued claims of the SignalQuest patents were invalid as obvious in light of various combinations of prior art.[8] In response, SignalQuest submitted evidence of the commercial success of its SQ-SEN-200 product for the examiner's consideration. Accepting that the SQ-SEN-200 embodied the invention in the claims under examination, the examiner cited consumers' praise of the SQ-SEN-200's superior omnidirectional sensitivity and operation longevity as the basis for his conclusion that "it was the advantages provided by the recited

---

[8]Specifically, the examiner determined that claims 1-9, 12-14, 16, 18, 19, and 21 of the '748 patent; claims 1-8, 10, 12-17, and 19 of the '866 patent; and claims 1-8, 10, 13-16, 22, 23, and 25 of the '867 patent were obvious in light of various combinations of prior art.

features of the claimed invention that was responsible for the SQ-SEN-200 products['] commercial success in the market." Mot. for Summary Judgment Ex. F (document no. 86-8) at 21-22. Accordingly, the examiner found the requisite nexus between certain of the claims[9] and the SQ-SEN-200 product's commercial success and concluded that the commercial success evidence was sufficient to overcome the prima facie case for obviousness as to those claims. The examiner thus withdrew his obviousness rejection of these claims. At the same time, the examiner maintained his obviousness objection to claims that he did not find embodied by the SQ-SEN-200 product. These included, among others, claim 14 of the '748 patent, claim 15 of the '866 patent, and claim 16 of the '867 patent. In each patent, this dependant claim recited "[t]he sensor of claim 1, wherein the electrically insulative element . . . is square-like in shape."

Though SignalQuest argued to the USPTO that these claims should be allowed because they depended from allowable claims, the examiner found that SignalQuest failed to traverse the obviousness objection as to these three claims because SignalQuest did not submit any evidence of commercial success

---

[9]Claims 1, 2, 4-9, 12, 13, 16, 18, 19, 22-30, 32-40, and 42-56 of the '748 patent; claims 1-8, 10, 12-14, 16, 17, 20-28, 30-38, and 40-43 of the '866 patent; and claims 1-3, 5-8, 11, 13-15, 22, 23, and 25-35 of the '867 patent.

specifically as to those claims.  Mot. for Summary Judgment Ex. F (document no. 86-8) at 29-30; Ex. G (document no. 86-9) at 26-27; Ex. H (document no. 86-10) at 26.  SignalQuest initially appealed this finding, but subsequently withdrew those appeals and cancelled those dependent claims entirely.

The court must presume that the reissued claims of the SignalQuest patents are valid.  35 U.S.C. § 282; see also Kaufman, 807 F.2d at 974 (the presumption of validity is accorded to reexamined patents).  "The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity."  35 U.S.C. § 282.  In the summary judgment context, it is incumbent on defendants make a prima facie showing of obviousness-based invalidity.  See Freedman Seating Co. v. Am. Seating Co., 420 F.3d 1350, 1363 (Fed. Cir. 2005).  And here, the defendants do not even begin to make such a showing.  At oral argument, defendants clarified their belief that they had done so by submitting the prosecution history to the court.  But that prosecution history resulted in the issuance of a valid patent.  Defendants do not ask the court to determine the validity of the patent in the face of any specific prior art; nor have they proferred any alleged prior art on which the court

may base a determination of invalidity.[10]  Rather, defendants ask the court to read the examiner's obviousness objection as to one dependent claim into all of the patents' claims if (and only if) those claims are read to cover an embodiment with a square-shaped electronically insulative element.  See Mem. at 7-10; Reply at 1-4.  Absent any actual invalidity argument from the defendants, the court accordingly presumes the SignalQuest patents to be valid at this stage of the litigation.

   The court is not in a position to otherwise determine the patents' validity on this record.  To the extent that the defendants have attempted to dress a prosecution history estoppel

---

[10] As a result, defendants' reliance on Muniauction, Inc. v. Thomson Corp., 532 F.3d 1318 (Fed. Cir. 2008) is misplaced. There, the district court performed its own obviousness analysis and denied defendants' motion for judgment of invalidity as a matter of law, finding, inter alia, that plaintiff had presented evidence of commercial success sufficient to support the jury's verdict that the claims were not obvious. Muniauction, Inc. v. Thomson Corp., 502 F. Supp. 2d 477, 491 (W.D. Pa. 2007) rev'd in part, vacated in part, 532 F.3d 1318 (Fed. Cir. 2008).  The Court of Appeals for the Federal Circuit subsequently held that evidence of commercial success submitted by the plaintiff -- an "Innovations in American Government" award to the City of Pittsburgh for use of the claimed system -- "lack[ed] the required nexus with the scope of the claims" because the associated press coverage "focuse[d] on the availability of maturity-by-maturity bidding . . . as compared to the conventional all-or-none bidding" where both asserted independent claims included both systems. Muniauction, 532 F.3d at 1328. Here, it was the examiner who found certain claims to be obvious in light of the prior art and, subsequently, found the requisite nexus between SignalQuest's product and the reissued claims.  No prior art is before the court on this motion.

argument in the trappings of an invalidity summary judgment motion, the court denies that motion and will address the prosecution history estoppel issue where it properly belongs -- in the context of determining the proper scope of the patent's claims. Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., 535 U.S. 722, 733 (2002) ("Estoppel is a rule of patent construction that ensures that claims are interpreted by reference to those that have been cancelled or rejected." (internal quotations omitted)); Trading Techs. Int'l, Inc. v. eSpeed, Inc., 595 F.3d 1340, 1357 (Fed. Cir. 2010) ("Prosecution history estoppel applies at the time of infringement to determine whether the applicant surrendered claim scope during prosecution.").

## IV. Conclusion

For the foregoing reasons, the defendants' motion for summary judgment[11] is  DENIED.

**SO ORDERED.**

                                          _/s/ Joe Laplante_
                                          Joseph N. Laplante
                                          United States District Judge

Dated: February 23, 2016

cc:  Brian David Thomas, Esq.
     Peter Anthony Nieves, Esq.

---

[11] Document no. 86.

Robert R. Lucic, Esq.
Mark C. Rouvalis, Esq.
Nicholas F. Casolaro, Esq.
Timothy N. Trop, Esq.